**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 2:18-cr-1023 |
| | ) | |
| vs. | ) | |
| | ) | **SENTENCING MEMORANDUM** |
| JIMMY DUNBAR, JR. | ) | |
| | ) | |
| | ) | |
| | ) | |

## INTRODUCTION

The crime at issue in this sentencing arose out of the proliferation of cell phones in South Carolina prisons, and a fraudulent scheme that was misguided, by a person whose life has been defined by a lack of guidance.

### I.      The Individual

Jimmy Dunbar, Jr. is currently serving a thirty-year sentence within the South Carolina Department of Corrections (SCDC), for the crimes as listed in ¶ 23, PSR.  When he sits before the court, he will be nearly 38 years old. ¶ 54, PSR.

He never knew his father.  He grew up living with his mother in poverty in Columbia, South Carolina, and is the product of a home that featured domestic violence between his stepfather and mother. ¶ 55, PSR.  He also suffered abuse at the hands of his mother as a teenager.   ¶ 56, PSR.  He dropped out of High School, only having completed the 9th grade, and moved out and on his own at age 17. ¶s 56, 60, PSR.

He did manage to acquire a GED in 2009 while serving a prison sentence at SCDC.  ¶ 60, PSR.

Jimmy Dunbar was sentenced to 30 years in March of 2015.  ¶ 23, PSR.  He stands before this court having compounded this difficulty on his own volition, but at 38 years old, even

assuming an early release, he would be close to 65 years old when he begins to serve time for this sentence.

We respectfully submit this memorandum on behalf of Jimmy Dunbar, Jr. to provide the Court with a better understanding of the person and the offense conduct. Punishment is to be imposed, but the sentence here should reflect the unique circumstances of the offense and the characteristics of the defendant under 18 U.S.C. § 3553(a).

## II.     The Offense Conduct

Life in prison is boring, and you're surrounded by criminals. It is, therefore, unremarkable that Mr. Dunbar chose to embark on a scheme to defraud others.   He utilized a contraband cellphone. ¶ 6, PSR. He created a fake profile of an underage teen girl on the Website "plentyoffish.com." ¶ 11, PSR.

He did this for the financial benefit.  He convinced himself that the scheme was not entirely wrong because these adults were communicating with an underage profile in the first place.  His thinking has changed in that regard, since, and he understands that it was wrong, and expressed contrition the only way he can: by pleading guilty and accepting responsibility for his actions. He is also not objecting to the proposed Order of Restitution.

## III.     The Guideline Range

This is a case where the Sentencing Guideline range is overly punitive when applied to the case as charged in separate counts, as it was all the same course of conduct.  The Guideline ranges employed by the U.S. Sentencing Commission for financial crime related offenses are not, on information and belief, based on empirical evidence, lead to irrational outcomes and should not be accepted without significant judicial scrutiny.

Post-*Booker[1]*, the Sentencing Guidelines are purely advisory and are just one factor among many that courts are required to consider, even when the Guidelines calculation tracks empirical sentencing considerations.

The base offense level for these crimes starts at a 7 for the Conspiracy to Commit Wire Fraud. ¶ 34, PSR, a 9 for the extortion count ¶ 40, PSR, and then starts at a 13 for the money laundering count. ¶ 45, PSR. These were all part of the same course of conduct and common scheme or plan. The disparities are inexplicable.

The guidelines add 4 points to each range for the amounts taken from the victims. ¶s 35, 41, and 45, PSR, respectively. Each count also adds 3 points because some of the victims were government officers or employees and the offense of conviction was motivated by such status. ¶s 37, 42, and 46, PSR, respectively.

Defendant Dunbar submits that he did not target the victims based on this status, that he targeted anyone who contacted his fictitious profile. ¶ 6, PSR.

Dunbar's ranges are further enhanced 2 points each by managerial status. ¶s 38, 43, and 48, PSR, respectively. While he did utilize Mitchlene Padgett to collect the money and did direct her to do so, he was incarcerated at the time, so was limited in his ability to manage and supervise her.

Finally, Dunbar's course of conduct all gets grouped according to 3D1.2(b) ¶ 50, PSR. The Guidelines do dictate that offenses under 2B1.1 be grouped, however, are disparate in treatment of what is, essentially, the same crime. Furthermore, 3D1.2(d) specifically excludes extortion from the operation of the subsection.

---

[1] *United States v. Booker*, 543 U.S. 220 (2005).

These enhancements encompass the exact conduct of the latter offenses, which are part and parcel of the former by necessity.   Application of the § 3D Chapter makes the operation and application of the guidelines onerous and confounding.

Defendant Dunbar humbly submits that this is ambiguous as applied to this case and analogous conduct.   Furthermore, grouping has already, for all intents and purposes, occurred with respect to the specific applications as outlined above.   At best, this is double counting.

Lastly, the Guidelines range at issue is overly punitive because it adds 2 points for him having committed the offense while incarcerated, when the criminal history category already puts him near the top in category IV.  Those two points move him to a category V.

### IV.     Motion for a Variance/Non-Guidelines Sentence

Based on the foregoing, Defendant Dunbar hereby humbly moves for a variance and/or non-guidelines sentence sufficient, but not greater than necessary, to comply with paragraph 2 of 18 U.S.C. 3553(a), based the nature and circumstances of the offense, while honoring respect for the law, as well as the nature and characteristics of Jimmy Dunbar, Jr., to include his age, familial history, and remorse for his conduct.

The range for Count 1, applied consecutively to his current sentence, is more than adequate to deter future criminal conduct, promote respect for the law, protect the public and provide him with counselling and vocational training.  After acceptance, the 18 would be reduced to a 15, which for a category V would impose a range of 37-46 months.  USSG, Chapter 5, Part A.  If the court saw fit to vary to the range of a criminal history category IV, but impose total offense level of 17 as found in ¶ 53, PSR, then that would also dictate a range of 37-46 months.

A sentence in this range would allow him merely the chance to re-enter society after serving his current sentence and the one before the court, can provide adequate supervised release

for what would then be a sixty-eight year old man, and is more than sufficient to accomplish the goals of 18 U.S.C. 3553(a), with respect to deterrence.

## CONCLUSION

Jimmy Dunbar, Jr. appears before the court guilty of serious crimes, his behavior inexcusable regardless of circumstance; however, his sentence should suit the particulars of this unusual case, and we respectfully request that this court impose a sentence sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED,

s/*Jason C. Bybee*
_____
Jason C. Bybee, Bar # 10487
Attorney for Defendant Jimmy Dunbar, Jr.
P.O. Box 72013
North Charleston, S.C. 29405

July 29, 2019

## CERTIFICATE OF SERVICE

I hereby certify that I have this date caused one true and correct copy of the within document to be served in the above-captioned case, via the courts e-noticing system, but if that means failed, then by regular mail, on all parties of record.

s/*Jason C. Bybee*
Jason C. Bybee